UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Charles Glenn</u>

      v.                                    Civil No. 05-cv-074-JD

<u>United States of America</u>


O R D E R


     In this section 2255 petition, the petitioner claims that
his counsel was ineffective because (1) counsel did not
effectively present petitioner's alibi defense through witnesses
the petitioner had identified; (2) counsel did not inform the
petitioner of his right to testify in his own defense; and (3)
counsel did not allow petitioner to testify in his own defense
concerning his alibi.

     The petitioner was found guilty on September 9, 2003, of one
count of distribution of Xanax and one count of distribution of
crack cocaine in violation of 21 U.S.C. § 841(a)(1).  He was
found not guilty of a third count charging him with distribution
of crack cocaine.  He was sentenced to serve a term of
imprisonment of 262 months followed by 72 months of supervised
release.  On appeal the judgment and sentence were affirmed.
<u>United States v. Glenn</u>, 389 F.3d 283 (1st Cir. 2004).

     A hearing was held at which petitioner was represented by
new counsel.

In reviewing the petitioner's claims, the court will apply
the standard set forth in Strickland v. Washington, 466 U.S. 668
(1984), which is succinctly summarized in the case of Cofske v.
United States, 299 F.3d 437, 441 (1st Cir. 2002):

> Not every error amounts to ineffectiveness.  See Lema
> v. United States, 987 F.2d 48, 51 (1st Cir. 1993).  An
> ineffective assistance of counsel claim will succeed
> only if the defendant--who bears the burden on both
> points, Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir.
> 1994)--shows (1) that counsel's performance fell below
> an objective standard of reasonableness, and (2) that
> but for the error or errors, the outcome would likely
> have been different, Strickland, 466 U.S. at 687, 104
> S.Ct. 2052.

The evidence elicited at trial is set forth in detail in the
Glenn opinion, supra, and need not be repeated here.  Suffice it
to say that there was evidence of hand to hand sales between the
petitioner and an undercover police officer who identified the
petitioner as the seller.  This testimony was corroborated by
surveillance officers who observed the transactions and by a
codefendant.  As the appeals court noted in its opinion, there
was "overwhelming evidence of Glenn's guilt."  Glenn, supra at
287.

The petitioner claimed an alibi defense and mistaken
identity.  He and his trial counsel agree that they conferred
approximately six times before trial, and this is borne out by
the time sheets attached to the CJA voucher.  From the outset he

maintained that he was not in Manchester when the sales occurred, that he was innocent, and that he wanted to go to trial.  He eschewed the opportunity for a negotiated plea.

He provided counsel with the names of individuals he claimed would corroborate his alibi defense.  Counsel contacted the witnesses and determined what they might have known about where the petitioner was during the times of the sales.  As counsel testified at the hearing, "There was a lot of conflicting memories as to who was doing what and where."  In an effort to present a coherent alibi defense, counsel decided to call only some of the witnesses because of the contradictions that existed among the witnesses.  Indeed, during trial counsel stated on the record, "[T]here was two other witnesses I called in.  I talked to them.  They're not of any enlightenment for the court because of the time frames, it was so long ago, it was hard to get that out of them when I talked to them previously.  So I'm not going to bother calling them now. . . ."  See Trial Tr. 9/9/03 at 43.

Counsel called the petitioner's aunt, sister, and daughter as alibi witnesses, and the petitioner's son as an alibi and mistaken identity witness.  The jury did not believe their testimony which is understandable give their poor memories, their confusion about time frames, and their obvious interest in helping the petitioner.  As the court stated at the sentencing

3

hearing in referring to their testimony, "I think the kindest way to describe it is that they tailored their testimony to the defendant's alibi."  See Sentencing Tr. 3/4/04 at 3.

Given what he had to work with, the court finds that counsel presented the petitioner's alibi and mistaken identity defenses to the jury in a reasonably effective way, and the petitioner has failed to sustain his burden of showing that counsel's performance fell below an objective standard of reasonableness on the first claim.

The second and third claims are interrelated.  While the petitioner claims that he was not informed of his right to testify, it is evident from his and his trial counsel's testimony at the hearing that the petitioner knew he could testify. Counsel discussed with him the risks he might face if he testified and also instructed him to tell the truth if he testified.  Counsel did not review any specific questions the petitioner might be asked.

The petitioner said that early on in their relationship he discussed testifying with counsel and told him he wanted to testify.  He also said that on several occasions during the course of the trial he told counsel he wanted to testify. Therefore, it is clear that the petitioner knew he had a right to testify in his own defense and that he communicated to his

4

counsel his desire to testify on a number of occasions right up
to the time that defense counsel rested.

Defense counsel had no specific recollection as to when he
discussed taking the stand with the petitioner but stated that
"generally" he decides with his client whether or not he will
take the stand after the last defense witness has testified.
Counsel did not request a recess to discuss this matter with the
petitioner.  He could only testify as to what he "generally"
does, which is to depress the microphone and ask the client if he
wants to take the stand.  Counsel had no present recollection
concerning what he discussed with the petitioner.  He thought the
petitioner shook his head "no" but he really could not remember.
He did recall there was no "give and take" between him and the
petitioner but that they had discussed the advantages and
disadvantages of testifying during trial preparation.

The court finds that the petitioner knew he had the right to
testify, that on a number of occasions he made his intention
clear to counsel that he wanted to testify, and that counsel,
knowing his client wanted to testify, did not take the necessary
time to engage in effective communication with his client at the
critical time in the trial when the decision had to be made.  The
petitioner did not waive his right to testify.

Counsel had an obligation to communicate effectively with

5

the petitioner concerning whether or not he should testify at an
appropriate time in the defense's case.  If that required a
recess, he could have asked for one, and the request would have
been granted.  Counsel had an obligation, through effective
communication, to inform the petitioner of his advice concerning
the advantages and disadvantages of testifying and to determine
what the petitioner's decision was.  If the petitioner decided to
testify, counsel had an obligation to call him as a witness even
if it was contrary to counsel's advice.  While the petitioner
clearly had a right to testify in his own defense, there is no
requirement that that right be exercised wisely.  Criminal
defendants often choose unwisely to testify in their own behalf
and ultimately it is to their detriment.

      As a direct result of counsel's failure to engage in
effective communication with the petitioner concerning whether or
not he would testify, counsel either mistakenly understood that
the petitioner had changed his mind, on a matter about which he
had been adamant, and had decided not to testify, or counsel
unilaterally made the decision not to put the petitioner on the
stand because of what he perceived to be the disadvantages
associated with doing so.  Counsel's failure to effectively
consult with his client about testifying and his ultimate failure
to allow him to testify fall below an objective standard of

reasonableness.  The petitioner has sustained his burden under the first prong of <u>Strickland</u> on the second and third claims.

Under the second prong of <u>Strickland</u> the petitioner had the burden of showing that the outcome of the trial would likely have been different, or stated another way, that there is a reasonable probability that he would have been found not guilty had he been allowed to testify.

At the hearing, the petitioner did not present a coherent recitation of what he would have testified to had he been permitted to do so.  He reiterated in a general way that he was in Lowell and not Manchester at the time of the sales.  He admitted that his witnesses were confused as to their testimony and allowed that if he had testified first, he could have "jogged my family's memory."  The petitioner, however, misunderstands what import his testimony might have had on the testimony of his family witnesses.  The witnesses were sequestered, so even if the petitioner had testified first, he would not have been able to jog their memories.  The very purpose of sequestration is to prevent witnesses from either advertently or inadvertently conforming their testimony to the testimony of other witnesses in the case.  Sequestration is one of several important means by which to determine the truth about events when more than one witness is involved in them.  The court concludes based on the

7

information before it that had the petitioner testified he would
in all probability have added to the confusion surrounding his
alibi defense to his detriment.

There were other issues that would have adversely affected
the petitioner's alibi defense.  He had a prior record and part
of that record would probably have been admitted for the limited
purpose of assessing his credibility.  In addition, the
prosecutor indicated to defense counsel that if petitioner
testified, the government would inquire into a related incident
in which the petitioner took money from an undercover officer and
never provided the drugs in exchange.  It is likely that evidence
of this related incident would have been admitted.

The evidence against the petitioner was indeed overwhelming.
Given the confusion surrounding the alibi and mistaken identity
defenses, and the likelihood that the petitioner would have added
to that confusion with testimony the credibility of which would
have been questioned, the court finds that it is highly
improbable that the result in this case would have been different
had the petitioner testified.  The petition has failed to meet
his burden under the second prong of <u>Strickland</u> on claims two and
three.

Petition dismissed.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 22, 2005

cc:  Paul J. Haley, Esquire
     Peter E. Papps, Esquire